IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ROBERT J. ENGELHARDT,

      Petitioner,

      v.                             No. 11-3179-SAC

JAMES HEIMGARTNER, et al

      Respondents.


MEMORANDUM AND ORDER

This case comes before the Court on a petition for habeas corpus filed pursuant to 28 USC § 2254 by an inmate at El Dorado Correctional Facility who was convicted of first degree murder and sentenced to a hard 50 life sentence.

The parties do not dispute the procedural history of the case or the facts regarding the underlying crime as stated in the Kansas Supreme Court's decision in petitioner's state criminal case, *State v. Engelhardt,* 280 Kan. 113 (2005), and in the Kansas Court of Appeals (KCOA)'s decision reviewing petitioner's K.S.A. 60-1507 proceeding, *Engelhardt v. State*, 2011 WL 445953 (2011) (Case No. 103,556). Accordingly, the Court adopts those facts as correct and finds it unnecessary to repeat them herein except as set forth in the analysis of the petition. *See* 28 U.S.C. § 2254(e)(1); *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004). Respondents admit that Petitioner has exhausted his available state court remedies.

## I. AEDPA Standard

This matter is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA imposes a "highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. ––––, 130 S.Ct. 1855, 1862 (2010) (citation and internal quotation marks omitted). Under AEDPA, where a state prisoner presents a claim in habeas corpus and the merits were addressed in the state courts, a federal court may grant relief only if it determines that the state court proceedings resulted in a decision (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to clearly established Federal law" when: (a) the state court " 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' "; or (b) " 'the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent .' " *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision involves an unreasonable application of clearly established federal

law when it identifies the correct legal rule from Supreme Court case law, but unreasonably applies that rule to the facts. *Williams*, at 407–08. Likewise, a state court unreasonably applies federal law when it either unreasonably extends, or refuses to extend, a legal principle from Supreme Court precedent where it should apply. *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

In reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). In order to obtain relief, a petitioner must show that the state court decision is "objectively unreasonable." *Williams,* 529 U.S. at 409 (O'Connor, J., concurring). "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard,* 468 F.3d at 671.

## II. Issues

### A. Petitioner's Absence During Jury View

Petitioner contends that his fifth and sixth amendment rights were violated when the district court prohibited him from being present during the

jury's view of the crime scene. Petitioner alleges that the trailer site was emotionally charged, that the physical corroboration of witness' testimony was crucial, and that his absence conveyed to the jury that he was dangerous or a flight risk.

The prosecution requested a jury view. The district court believed that the view of the trailer where the stabbing occurred would help the jury understand the amount of space in the trailer and its layout. *Engelhardt,* 280 Kan. at 120. The district court ruled that petitioner would not be allowed inside the trailer because of its close quarters, but could be present outside the trailer. The court suggested two practical ways to accomplish that, but petitioner declined. *Id.* The bailiff took only the jurors to the scene. The district judge had directed them to enter the trailer two at a time, to walk to one end and back, and then to get back on the bus. The judge had further admonished the jurors not to talk among themselves or touch anything in the trailer. *Id.* at 121. No one contends that the jury violated these admonitions.

## 1. State Court Holding

The Kansas Supreme Court recognized that the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment require a defendant's presence at every critical stage of the criminal proceedings against him. 280 Kan. at 122. But the Court found the jury view did not constitute a critical stage of the proceedings against him.

280 Kan. at 122-24. The Court found that the role of the jury view was "strictly corroborative," as it enabled them to see the space available in the trailer, particularly the distance between the place of the attack (in the front room) and the place the witnesses were (in the bedrooms), and the results of the clean-up job described by witnesses (bleaching, repainting, etc.). *Id*, at 123.

Additionally, the Court concluded that "[i]n light of the overwhelming evidence against Engelhardt in this case, any theoretical error in excluding him from the jury view would have been harmless under any potentially applicable formula." 280 Kan. at 125. It rejected as illogical petitioner's claim of prejudice, stating:

> As for the possibility that Engelhardt's absence may have contributed to a jury perception of him as a flight risk or dangerous, we have no doubt that jurors seeing him inside the trailer in shackles and accompanied by police officers would have been led to a similar, perhaps stronger, perception.

280 Kan. at 125.

## 2. Habeas Review

It is a basic premise of our justice system that during a felony prosecution, the defendant has a Fourteenth Amendment privilege to be present under certain circumstances.

> The Court has assumed that, even in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right "to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." *Snyder v. Massachusetts,* 291 U.S. 97, 105-106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934).

> Although the Court has emphasized that this privilege of presence is not guaranteed "when presence would be useless, or the benefit but a shadow," *id.,* at 106-107, 54 S.Ct., at 332, due process clearly requires that a defendant be allowed to be present "to the extent that a fair and just hearing would be thwarted by his absence," *id.,* at 108, 54 S.Ct., at 333. Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.

*Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S.Ct. 2658, 667 (1987) (finding no due process violation by excluding defendant from a hearing to determine two young witnesses' competency to testify). Two common exceptions to this rule exist but are inapplicable here. *See Crosby v. United States,* 506 U.S. 255, 259 (1993) (waiver by voluntary absence); *Illinois v. Allen,* 397 U.S. 337, 343 (1970) (forfeit by disruptive behavior).

The United States Supreme Court has specifically ruled that a felony defendant has no right to be present at a bare inspection. *See Snyder v. Com. of Mass.*, 291 U.S. 97, 108, 54 S.Ct. 330 (1934), overruled on other grounds by *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) (finding the Fourteenth Amendment does not assure an accused charged with a felony the privilege to be present at a mere view of scene of the offense, where nothing is said to direct the jury's attention to features to be observed, and nothing improper is shown). "While portions of *Snyder* have been overruled, the central holding of *Snyder* remains good law. *Larson v. Tansy,* 911 F.2d 392, 394 (10th Cir. 1990); *Kentucky v. Stincer,* 482 U.S. 730, 745 (1987); *Devin v. DeTella,* 101 F.3d 1206, 1209 (7th Cir.

1996)." *Stewart v. Roberts*, 2006 WL 1128701 (D.Kan. 2006) (denying habeas relief because defendant's absence during a jury view of the crime scene is not a constitutional violation). Thus no constitutional violation occurred here, where the jury conducted a bare inspection outside Petitioner's presence.

Petitioner claims prejudice, but fails to show how his presence at the trailer during the jury viewing would have made any difference. *See Hale v. Gibson,* 227 F.3d 1298 (10th Cir. 2000) (finding defendant's absence from a hearing on counsel's motion to withdraw did not violate the defendant's due process rights). Petitioner had been in the trailer before and knew its logistics and appearance so was able to discuss with his attorney matters pertaining to the scene. His presence would not have helped ensure a more reliable determination as to the size and location of the rooms in the trailer, the existence or extent of the clean-up, or any other matter.

The sole specific suggestion of prejudice is that the jury might infer he was too dangerous or too much a flight risk to attend the viewing. But the jury had heard other testimony about petitioner's behavior which would have warranted a conclusion that he was dangerous, and it is sheer speculation to contend that his absence during the bare inspection was likely to prejudice the petitioner in this respect. *See Stewart*, 2006 WL 1128701, 8 (finding no support in the record for "petitioner's speculative argument" that "he was

prejudiced because the jury might have inferred that he was too dangerous to come to the crime scene viewing.").

Because petitioner has failed to establish that a constitutional deprivation occurred, the Court does not reach Respondent's harmless error analysis.

**B. Prior Bad Acts**

Petitioner contends that the district court's admission of the following evidence denied him his right to a fair trial: testimony and a mug shot showing that Petitioner was on parole, had absconded from parole, and was wanted at the time of the crime; a photograph of petitioner's girlfriend, Michelle Drake, taken at the time of her arrest showing bruises he allegedly inflicted after the homicide; and his use of Brian Smith's identification when stopped by police for a traffic infraction.

**1. State Court Holding**

The State's theory in this case was that petitioner killed Michael because he was afraid Michael was a snitch who would report petitioner to authorities as a parole absconder. Before trial, petitioner filed a K.S.A. 60–455 motion in limine to preclude evidence regarding his parole status. The trial court ruled that evidence that petitioner was on parole and that he had absconded form parole was admissible, R. Vol. 10, p. 18, but the nature of his prior conviction was inadmissible. The court gave a limiting instruction

that the jury could consider evidence that petitioner's had a parole warrant for his arrest solely for the purpose of proving his motive.

The Kansas Supreme Court found that admission of petitioner's parole status was relevant to establishing motive for the crime and was admissible under state rules. *Engelhardt*, 280 Kan. at 127-29, applying K.S.A. 60–455.

The Kansas Supreme Court questioned the relevance of the other challenged evidence, but found that any error in admission was harmless given the "overwhelming evidence" or weight of the evidence against petitioner. *See* 280 Kan. at 130-31.

### 2. Habeas Review

"Federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." *Estelle v. McGuire,* 502 U.S. 62, 67–68,112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Thus, federal courts should not disturb a state court ruling unless "the error, if any, was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Williamson v. Ward,* 110 F.3d 1508, 1522–23 (10th Cir. 1997). This fundamental fairness test controls where the challenged evidence is a prior bad act. *Smallwood v. Gibson,* 191 F.3d 1257, 1277 (10th Cir. 1999). *See Bullock v. Carver,* 297 F.3d 1036, 1055 (10th Cir.), *cert. denied,* 537 U.S. 1093 (2002). Petitioner thus bears the burden to show that the admission of the challenged evidence

prejudiced him in such a way as to "infect[ ] the entire trial." *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977).

Regarding evidence of petitioner's parole status, the record confirms that petitioner's fear of being reported for absconding from parole was repeatedly revealed in his conversations with others leading up to the murder and with the victim immediately preceding the murder. There was "a logical, even necessary, connection between this evidence and the otherwise sudden attack on the victim." 280 Kan. at 129-29. Admitting evidence relating to petitioner's parole status for the limited purpose of showing petitioner's motive to commit the murder did not deny fundamental fairness.

As to the other challenged bad acts evidence, the Court finds their admission to be harmless, as that term is used in federal habeas review. Petitioner's claim of prejudice is based upon his erroneous belief that "the jury was presented with a close question whether the petitioner participated in the crime or not." Dk. 1, p. 13. To the extent the evidence was irrelevant, it had no tendency to sway the jury on any issue before them. Nor was the evidence so prejudicial that it would have incited the jury's emotions, leading them to convict based on passion or prejudice. Having reviewed the record, the Court finds that admission of the evidence did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)

(quoting *Kotteakos v. United States*, 328 U.S. 750, 777, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

## C. Aiding and Abetting Instruction

Petitioner contends that his due process rights were violated by Instruction Number 15 because it confused the jury and lowered the State's burden of proof, permitting the jury to find him guilty of premeditated first-degree murder even absent proof of specific intent of premeditation. That instruction stated:

> A person who intentionally aids or abets another to commit a crime is also responsible for any other crime committed in carrying out or attempting to carry out the intended crime, if the other crime was reasonably foreseeable.

280 Kan. at 132. *See* PIK Crim.3d 54.06 (Responsibility for Crimes of Another—Crime Not Intended). The jury was also instructed on aiding and abetting another to commit a crime with intent to promote or assist in its commission. *See* Instruction No. 14; PIK Crim. 3d 54.05.

### 1. State Court Holding

The Kansas Supreme Court found that the district court erred in giving Instruction Number 15 because it amounted to a felony murder instruction that lacked any instruction on an underlying felony, such as aggravated battery. *Engelhardt*, 280 Kan. at 131-34. But the court found that error to be harmless, stating:

> The overwhelming evidence in this case demonstrated that Engelhardt was guilty of either intentionally murdering the victim or aiding and abetting the intentional murder. The victim was stabbed approximately

55 times, and Engelhardt was clearly involved. He was not an innocent bystander. The jury instructions and the evidence, considered as a whole, did not mislead the jury, even if the instructions were in some way erroneous. (Citation omitted.).

280 Kan. at 133-134.

## 2. Habeas Review

Petitioner must demonstrate that the instructional error "so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977), quoting *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). " 'A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.' " *Boyde v. California,* 494 U.S. 370, 378, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990), quoting Cupp, 414 U.S. at 146–47. Due process requires that every element of a crime be established beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 315-16, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). But erroneous jury instructions that omit an element of an offense are subject to harmless-error analysis. *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827 (1999). So even assuming constitutional error, habeas relief is unavailable unless that error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht, 5*07 U.S. at 627.

Here, even assuming that giving the challenged instruction was constitutional error, petitioner fails to show that it had a substantial and injurious effect or influence in determining the jury's verdict. The jury was

properly instructed in Instruction 14 on intentionally aiding or abetting another to commit a crime with intent to promote or assist in its commission, and was properly instructed in Instruction 26 that the State had the burden to prove the defendant's guilt beyond a reasonable doubt. Petitioner has not shown how the presence of Instruction 15, which deals with unintended but reasonably foreseeable crimes, could have contributed to the jury's finding him guilty of first degree murder, which was clearly stated to be an intentional crime. Nor has petitioner shown how the absence of this Instruction may have led the jury to find him not guilty of first degree murder. Petitioner has not pointed to evidence that could rationally lead the jury to find that petitioner either killed Michael unintentionally or did not aid and abet an intentional murder. In this court's view, no reasonable person could conclude that the erroneous instruction had any substantial or injurious effect on the jury's verdict. *See generally Neder.*

### D. Smith's Polygraph Test Results

Petitioner contends that his due process right to cross-examine witnesses was violated by the court's excluding the results of Brian Smith's polygraph examination. Petitioner contends that these results are "critical impeachment material."

> In his original statement to police, Brian took the blame for killing Michael; in a later interview, Brian said Engelhardt had tried to stop him. He then changed his story to say that Engelhardt stabbed Michael in the chest and cut his throat. Apparently, police eventually told Brian that his inconsistent statements meant he would have to take a polygraph examination. However, the polygraph test was not

administered until after he had entered into his plea agreement, and the agreement made no provision for it. The examiner determined that Brian was not truthful in his answers when he said that he saw Engelhardt stab Michael in the neck and chest.

820 Kan. at 137.

### 1. State Court Holding

The Kansas Supreme Court held that polygraph evidence cannot be presented for purposes of corroboration or impeachment, and that the district judge did not err in adhering to the longstanding prohibition of polygraph evidence absent a stipulation of the parties. Petitioner also argued that this exclusion violated his constitutional rights to confrontation and to present a defense. The Court summarily rejected this contention, citing "*Shively,* 268 Kan. at 588, 999 P.2d 952 (citing *United States v. Scheffer,* 523 U.S. 303, 315–17 … [1998])."

In addressing another issue, the Kansas Supreme Court found that the State's evidence did not rest primarily on Smith's testimony, that multiple witnesses implicated petitioner in the murder, that Smith was not called as a witness for the State but was called by the defense for cross-examination regarding his statements introduced through other witnesses during the State's case, and that he was thoroughly cross-examined on his shifting version of events so his credibility was unquestionably attacked. *Engelhardt*, 280 Kan. at 141-42.

## 2. Federal Habeas Review

In *Scheffer,* the United States Supreme Court held that exclusion of polygraph evidence does not violate the accused's constitutional right to present a defense. *Id.* at 317. It recognized that "[a] defendant's right to present relevant evidence is not unlimited," that there is no consensus that polygraph evidence is reliable, and that excluding polygraph evidence is a rational means of advancing the legitimate interest in barring unreliable evidence." 523 U.S. at 308-11. Excluding polygraph evidence does not prevent the defendant from introducing any factual evidence, but merely prevents him from introducing expert opinion testimony to bolster his own credibility, a function reserved to the jury. *Id.* at 317.

The Kansas Supreme Court's decision in this case was consistent with *Scheffer*, which it cited. The state court applied that case it in a reasonable manner, reaching the same ultimate decision as had the United States Supreme Court on the same issue. Therefore, federal habeas relief is not warranted on this claim.

## E. Hard 50 Sentence

Petitioner next contends that the district court lacked sufficient evidence to impose a Hard 50 sentence, and that the Hard 50 sentencing scheme is unconstitutional. At the time of petitioner's conviction and sentencing, a judge could impose a hard 50 sentence (a mandatory minimum sentence of 50 years) for a first-degree murderer if the judge

found by a preponderance of the evidence that certain aggravating factors were present. *State v. Robertson*, 279 Kan. 291, 307 (2005). *See* K.S.A. 21-6620. The district court imposed a hard 50 sentence for petitioner after finding two aggravators: petitioner had previously been convicted of a felony in which he inflicted great bodily harm; and the murder had been committed in an "especially heinous, atrocious, or cruel manner." *See* K.S.A.2004 Supp. 21–4636(a) and (f).

### 1. Sufficiency of Evidence

Petitioner challenges the sufficiency of the evidence to support the second aggravator.

### a. State Court Holding

The Kansas Supreme Court rejected this very contention, finding:

> K.S.A.2004 Supp. 21–4636 sets forth circumstances that can lead to a finding a defendant committed a crime in an especially heinous, atrocious, or cruel manner:
>
> "(f).... In making a determination that the crime was committed in an especially heinous, atrocious or cruel manner, any of the following conduct by the defendant may be considered sufficient:
> ....
> (3) infliction of mental anguish or physical abuse before the victim's death; [and]
> (4) torture of the victim."

> Our standard of review is whether, after review of the evidence, viewed in the light most favorable to the prosecution, a rational factfinder could have found the existence of the aggravating circumstance by a preponderance of the evidence. *State v. Robertson,* 279 Kan. 291, 307, 109 P.3d 1174 (2005).

> When the evidence in this case is viewed in the light most favorable to the prosecution, it supports the district judge's finding

that Michael's murder was committed in an especially heinous, atrocious, or cruel manner. Engelhardt and Brian stood over Michael and stabbed him approximately 55 times. The attack lasted about 20 minutes, and several witnesses heard Michael's anguished screams. Engelhardt bragged to his friends about hearing a hissing sound when he stabbed Michael in the chest and said callously that it seemed each of Michael's final heartbeats caused more blood to "just squirt out." The coroner testified that there was evidence of two defensive injuries to Michael's right arm and possible defense wounds on his right shoulder. These facts demonstrate the existence of the aggravating factors set forth in K.S.A.2004 Supp. 21–4636(f)(3) and (4).

*Engelhardt*, 280 Kan. at 143-44.

### b. Habeas Review

Due process of law under the United States Constitution requires that sufficient evidence support a conviction. *Jackson v. Virginia,* 443 U.S. 307, 318-19 (1979). The constitutional standard "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the elements of the crime beyond a reasonable doubt." (emphasis in original).

The Kansas Supreme Court applied the same standard that *Jackson* requires, and found sufficient evidence to establish the heinous, atrocious, and cruel aggravating factor as defined by Kansas law at the time*. See* K.S.A. 2004 Supp. 21-4636. *Engelhardt*, 280 Kan. at 143-44. When viewed in the light most favorable to the prosecution, the evidence established at trial as summarized above and as noted elsewhere in this memorandum and order (including the vast number of wounds, and the nature of them as described by the coroner) demonstrates that Petitioner inflicted both mental

anguish and physical abuse before the victim's death, and tortured the victim, warranting a finding that the crime was committed in a heinous, atrocious, or cruel manner. The Kansas Supreme Court's decision that the evidence was sufficient is based on a reasonable determination from the facts . Thus, petitioner is not entitled to federal habeas relief.

Petitioner additionally contends that the court improperly weighed and failed to consider mitigating circumstances. But the only mitigating circumstances petitioner offers were in fact considered by the court and were reasonably found to have been properly weighed upon review by the Kansas Supreme Court. *Compare Engelhardt*, 280 Kan. at 144-45 (addressing mitigating factors of petitioner's family support, the sentence given to Smith, petitioner's intoxication at the time of the murder, the length of sentence petitioner would serve without a hard 50 sentence, and the contention that petitioner was an accomplice to the murder) with Dk. 1, p. 28 (stating the same factors). No basis for habeas relief has thus been shown.

### 2. Constitutionality

Engelhardt contends here, as he did to the state courts, that Kansas' hard 50 sentencing formula is unconstitutional because it did not afford criminal defendants the right to have a jury determine beyond a reasonable doubt all the facts which might increase the maximum penalty for first-degree murder.

### a. State Court holding

The Kansas Supreme Court rejected this contention, finding that it had previously resolved the issue, that its prior cases had considered the federal cases cited by Petitioner, and that it had properly upheld the hard 50 sentencing scheme. *Engelhardt*, 280 Kan. at 142-43, citing *State v. Conley,* 270 Kan. 18, 11 P.3d 1147 (2000), *cert. denied* 532 U.S. 932 (2001), *State v. Hurt,* 278 Kan. 676, 686–88 (2004), and other cases.

### b. Habeas Review

In June of 2013, the United States Supreme Court held that facts that increase the statutory minimum sentence (no less than facts that increase the statutory maximum sentence) are elements of the offense that must be found by a jury and proved beyond a reasonable doubt. *Alleyne v. United States*, ___ U.S. ___, 133 S.Ct. 2151, 2156 (2013).[1] Thus for a judge, instead of a jury, to find facts that increase the statutory minimum sentence offends the Sixth Amendment. *Id.* Now, juries "must find any facts that increase either the statutory maximum or minimum because the Sixth Amendment applies where a finding of fact both alters the legally prescribed range and does so in a way that aggravates the penalty." *Id.*, at 2161, n. 2.

In response to *Alleyne*, the Kansas Legislature, at a special session in September of 2013, revised the state's hard 50 sentencing law. For crimes committed after that date, the statute requires the jury to find beyond a

---

[1] Briefs in this case were filed before 2013.

reasonable doubt one or more of the aggravating circumstances enumerated in the statute before imposing a hard 50 sentence. K.S.A. 21-6620. But the statute expressly provides that the new law shall not apply to cases in which the defendant's conviction and sentence were final prior to June 17, 2013. *See* K.S.A. § 21-6620(d). Petitioner's conviction and sentence were final long before that date. Accordingly, this statute is inapplicable to the Petitioner.

Neither the state statute nor *Alleyne* provides any relief to Petitioner here. A prisoner seeking federal habeas relief may rely on new constitutional rules of criminal procedure announced *before* the prisoner's conviction became final. *Teague v. Lane,* 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion). *See Penry v. Lynaugh,* 492 U.S. 302, 313, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (affirming and applying *Teague* rule). Finality occurs when direct state appeals have been exhausted and a petition for writ of certiorari from the United States Supreme Court has become time barred or has been disposed of. *Griffith v. Kentucky,* 479 U.S. 314, 321, n. 6, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

The Supreme Court has not made *Alleyne's* new rule of constitutional law retroactive to cases on collateral review, and the Tenth Circuit has determined that *Alleyne* does not apply retroactively to cases on collateral review. *See In re Payne,* 733 F.3d 1027, 1029 (10th Cir. 2013). *Alleyne* is an extension of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and rules based on *Apprendi* do not apply retroactively

on collateral review. *See Schriro v. Summerlin,* 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004). Thus it is most unlikely that the United States Supreme Court will declare *Alleyne* to be retroactive in the future.

The Kansas Supreme Court's decision was a reasonable determination of the law at the time petitioner's conviction and sentence became final. Accordingly, no basis for habeas relief has been shown. *See e.g., United States v. Richards*, 2013 WL 6511869, 3-4 (D.Kan. 2013); *United States v. Limon*, 2013 WL 6060602, 3 (D.Kan. 2013).

### F. Omission of Lesser Included Offenses

At trial, Engelhardt objected to instructions on the lesser included offenses of unintentional second-degree murder, voluntary manslaughter, and involuntary manslaughter. Accordingly, the district court did not instruct on those offenses, but did instruct on the lesser offense of intentional murder in the second degree. Defense counsel objected to that instruction as well and requested an instruction that intentional second-degree murder does *not* include situations involving mere "heat of passion" or "sudden quarrel." Instead, the Court instructed the jury that second degree murder would be established by proof that the Petitioner intentionally killed the victim and that the act occurred on a stated time and place, omitting any reference to "heat of passion" or "sudden quarrel." *See* Vol. IV-C, p. 99, Instr. No. 4; PIK Crim.3d 56.03. But on appeal to the Kansas Supreme Court, Petitioner contended that the jury should have had a chance to

conclude the murder arose in the heat of passion or during a sudden quarrel and thus was merely a voluntary manslaughter.

### 1. State Court Holding

The Kansas Supreme Court found no clear error because insufficient evidence supported the lesser included crimes of unintentional second-degree murder, voluntary manslaughter, or involuntary manslaughter. Specifically, the "victim's dozens of wounds, inflicted during a period of approximately 20 minutes, negate any claim that the stabbing and killing were unintentional." 280 Kan. at 135. It also found that Petitioner failed to show adequate provocation, as it was not persuaded that "a fear of getting caught while absconding on parole would cause an ordinary person to act in the way his behavior was described in this case." *Id.* at 136. Moreover, it found that any error in failing to instruct on the lesser offenses had been cured by the court's instruction on the offense of second-degree intentional murder and jury's conviction on the even greater offense of first degree murder. 280 Kan. at 136.

### 2. Habeas Review

The Supreme Court has never recognized a federal constitutional right to a lesser included offense instruction in non-capital cases. *See Beck v. Alabama,* 447 U.S. 625, 638 n. 14, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). And Tenth Circuit precedents establishes a rule of 'automatic non-reviewability' for claims based on a state court's failure, in a non-capital

case, to give a lesser included offense instruction. *Dockins v. Hines,* 374 F.3d 935, 938 (10th Cir. 2004). As a result, Petitioner cannot raise a debatable claim that he is entitled to habeas relief on this ground. *See Johnson v. Keith,* 726 F.3d 1134, 1135 n. 2 (10th Cir. 2013).

### G. Newly-Discovered Evidence

After Brian Smith, Petitioner's co-defendant, was convicted, he told a fellow inmate that Petitioner was "pissed because I put my case off on him." That same inmate heard Smith say twice that he "put [his] case off on [Engelhardt]." A defense investigator submitted an affidavit containing this information to the district court after Petitioner's trial.

### 1. State Court Holding

The Kansas Supreme Court rejected Petitioner's motion for a new trial based on the above newly discovered evidence because it was not shown that the statements had been made after Petitioner's conviction, as was necessary. Additionally, the Court found that admitting the desired statements at a new trial was unlikely to produce a different result, reasoning:

> Contrary to [Petitioner's] contention, the State's evidence did not rest primarily on Brian's testimony. As discussed above, multiple witnesses offered testimony implicating [Petitioner] in the murder. Moreover, Brian was not called as a witness for the State; he was called by the defense for cross-examination regarding his statements introduced through other witnesses during the State's case. Moreover, Brian was thoroughly cross-examined on his shifting version of events; his credibility was unquestionably attacked.

*Engelhardt*, 280 Kan. at 141-42.

## 2. Habeas Review

Because the court's denial of the motion for new trial was based on its exclusion of evidence, Petitioner may obtain habeas relief only "if the alleged error was so grossly prejudicial [that it] fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Revilla v. Gibson,* 283 F.3d 1203, 1212 (10th Cir. 2002). The category of infractions which violate fundamental fairness is very narrow. *See Bullock v. Carver,* 297 F.3d 1036, 1055 (10th Cir. 2002).

The newly-discovered evidence is to the same effect as evidence that was admitted during trial. Smith's admitted statements and the challenges to it gave the jury reason to believe, if it chose to do so, that Smith had attempted to place the blame on Petitioner for his own acts. The Supreme Court reasonably determined the facts in light of the evidence. Petitioner fails to demonstrate that his trial was rendered fundamentally unfair by the trial court's refusal to permit this evidence and allow a new trial.

## H. Impeachment Evidence

Petitioner next contends that his due process rights were violated by the court's exclusion of evidence that Smith had a 1993 conviction for aggravated battery. Petitioner contends that this evidence not only would impeach Smith's wife, but also would further his theory of the case — that Smith was a violent person who initiated the threats, intimidation and interrogation of the victim and murdered him.

Smith's wife, called by the State, testified that there had been "stress and tension" between the Smiths and Petitioner. The prosecutor questioned her about the reason for the tension relevant to the issue of "control." She replied that Smith was an alcoholic and that Petitioner would bring him alcohol, get him "very, very drunk," and try to turn him against her. She further testified that Petitioner did not like her to be around because then he could not manipulate Smith all the time, but the court sustained defense counsel's objection to that statement as "speculative."

On cross-examination, defense counsel asked whether her husband got violent when he drank. She replied that Smith was an alcoholic but "wouldn't say [he was] violent." She admitted he had "broken a few dishes here and there," and testified she could not remember whether he had threatened to kill her and her friend, but admitted she must have said so if an investigator's report said she did. 280 Kan. at 138-39. Defense counsel then requested permission to introduce Smith's aggravated battery conviction to help prove that Smith was capable of committing violent acts without Petitioner's influence. The court denied that request, finding that the State had not opened the door to such evidence.

## 1. State Court Holding

The Kansas Supreme Court determined that Smith's prior conviction was inadmissible under state evidentiary rules. The Kansas Supreme Court found that the wife was not a critical prosecution witness, stating:

> [n]umerous other witnesses testified to the events leading up to the murder and the activities to avoid detection after it occurred. Even if Dorothy's credibility had been destroyed, Engelhardt faced other highly effective and incriminating accusers.

280 Kan. at 140. It also noted that under Kansas law, specific instances of conduct relevant only to prove character traits other than honesty or veracity or their opposites are inadmissible as affecting credibility. 237 Kan. at 160 (citing K.S.A. 60–422[c], [d]; *State v. Nixon,* 223 Kan. 788, 576 P.2d 691 [1978]). Thus using evidence of Smith's prior aggravated battery conviction to show that Dorothy knew of this prior bad conduct and concealed it would have been improper.

## 2. Habeas Review

"Federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." *Estelle,* 502 U.S. at 67–68. Thus, federal courts should not disturb a state court ruling unless "the error, if any, was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Williamson,* 110 F.3d at 1522–23. Petitioner thus bears the burden to show that the admission of the challenged evidence prejudiced him in such a way as to "infect[ ] the entire trial." *Henderson,* 431 U.S. at 154. A habeas petitioner asserting a constitutional violation resulting from a state court decision to exclude evidence bears a heavy burden to demonstrate a due process violation. *Montana v. Egelhoff,* 518 U.S. 37, 43, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996). The Constitution affords trial judges "wide latitude"

to exclude evidence that is repetitive, marginally relevant, poses an undue risk of harassment, prejudice, or confusion, or is otherwise excluded through the application of the evidentiary rules. *Crane v. Kentucky,* 476 U.S. 683, 689–90, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986).

Here, testimony from Smith's wife does not paint him as "a peaceful person," as Petitioner contends, Dk. 1, p. 4, since she stated that he intentionally broke dishes and probably threatened to kill her and her friend. And evidence showing show that Smith was capable of committing violent acts even without Petitioner's influence lacks any great probative value, since Smith was admittedly in Petitioner's presence for some time before the murder, as well as during it.

Petitioner has failed to show that the trial court's decision to exclude the evidence of Smith's conviction violated Petitioner's due process right to present a defense. The trial court's application of state's evidentiary rules was reasonably found by the Kansas Supreme Court to be correct under state law. Federal habeas relief is not warranted on this claim.

## I. Judicial Bias

Petitioner contends that the trial court was biased and predetermined the case against him, as reflected in verbal statements he made throughout the case during pretrial and motions hearings, and in open court during the trial, and in a letter to counsel dated 10/30/02. In that letter, illustrative of the objectionable statements, the Judge stated that certain records would be

made part of the record "so that ultimately they can be reviewed by the appropriate appellate court." R. Vol. III, p. 24. The other challenged statements are to the same effect – that Petitioner would appeal the case, or that his appeal would be to the Kansas Supreme Court. *See* Dk. 1, p. 42-43. Petitioner interprets these statements to mean that the judge prematurely found that Petitioner would be convicted for an offense for which direct appeal to the Kansas Supreme Court is appropriate under Kansas statutes.

## 1. State Court Holding

In its decision denying Petitioner's K.S.A. 60-1507 petition, the district court specifically addressed this claim of judicial bias. He found it to be completely without merit because all of the statements were made outside the jury's presence and none of them reflected any bias on the part of the trial judge, stating:

> There are two principal reasons why this Court believes the concerns of [Petitioner] are completely without merit. First, all of the remarks quoted by [Petitioner] or alluded to by him were made at hearings *outside the presence of the jury.* [Emphasis in original] Because of this, even if this court did consider the remarks objectionable in any way, it is clear they could not have tainted the jury's findings. The second reason for rejecting [Petitioner's] contentions is much more crucial. I have read all the comments made by Judge Anderson which [Petitioner] complains about, and considered the nature of the hearing and the procedural context in which each of them was made. Having done so, I find that the statements made by Judge Anderson were factually correct, and in the context of their making were merely an assurance to the defendant that he was entitled to further review by the appellate courts of any decisions which he made which were adverse to [Petitioner]. A fair reading of the comments reveals absolutely nothing about them which would cause an objective listener to conclude Judge Anderson had predetermined [Petitioner] was guilty ...

In the opinion of this Court, to take any of Judge Anderson's comments complained about by [Petitioner] and impute bias is to torture his words in an unnatural way far beyond their normal and obvious meaning.

(R. Case No. 06-CV-208, I, 86-87.)

On appellate review, the KCOA concluded "the district court's findings of fact are supported by substantial competent evidence and are sufficient to support the district court's conclusions of law. We further conclude that the district court's memorandum decision adequately explained the basis of its decision." *Engelhardt*, 2011 WL 445953.

## 2. Habeas Review

Petitioner bears a "heavy burden" to show bias. A trial judge's comments do not show bias "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); *see also Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) (to succeed on a judicial misconduct claim, a party must "overcome a presumption of honesty and integrity in those serving as adjudicators"). *See Fero v. Kerby*, 39 F.3d 1462, 1478 (10th Cir. 1994).

Petitioner must make a substantial showing of bias rising to the level of a constitutional violation. Petitioner's showing is grossly insufficient to

meet this standard. The state court reasonably found that the trial court's statements did not reflect bias and did not influence the jury in any way.

## J. Prosecutorial Misconduct

Petitioner next contends that the Prosecutor committed misconduct and denied him due process by using false testimony from two detectives, and by asking the jury during closing argument to put itself in the witnesses' place. *See* Dk. 1, p. 44-47.

### 1. Perjured Testimony

The Court first addresses Petitioner's claim that the prosecutor committed misconduct by knowingly soliciting perjury from Detectives Bayless and Walton. Petitioner argues that minor variations in their testimony about statements made by Brian Smith during interviews, and minor differences between that testimony and earlier documentation of that interview, evidences a conspiracy by the detectives and the prosecutor to intentionally use false testimony.

#### a. State Court Holding

The state district court found the discrepancies to be of little import, and thus not material. (R. Case No. 06-CV-208, I, 87-89.) Further, the court noted that any discrepancies were highlighted by the defense on cross-examination, and that Detective Walton had corrected his statements from the witness stand. (R. Case No. 06-CV-208, I, 88-90.) The court observed, "[n]one of this was concealed from the jury. As the triers of fact, the jurors

heard both versions and had it pointed out to them that Walton had erred in his testimony . . ." (R. Case No. 06-CV-208, I, 90.) Additionally, the Court instructed the jury that it was for them to determine how much weight and credit to give to the testimony. (R IV, p.122.)

On appellate review, the KCOA concluded "the district court's findings of fact are supported by substantial competent evidence and are sufficient to support the district court's conclusions of law. We further conclude that the district court's memorandum decision adequately explained the basis of its decision." *Engelhardt*, 2011 WL 445953.

### b. Habeas Review

Habeas relief is not warranted unless the prosecutorial misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). *See Mayes v. Gibson*, 210 F.3d 1284 (10th Cir. 2000), *cert. denied*, 531 U.S. 1020, 121 S.Ct. 586, 148 L.Ed.2d 501 (2000). "Contradictions and changes in a witness's testimony alone do not constitute perjury and do not create an inference, let alone prove, that the prosecution knowingly presented perjured testimony." *Tapia v. Tansy*, 926 F.2d 1554, 1563 (10th Cir. 1991) (citations omitted). To demonstrate that the prosecution knowingly used perjured testimony, Petitioner must show: "1) that the testimony was false, 2) that it was material, and 3) that it

was knowingly and intentionally used by the government to obtain a conviction." *United States v. Wolney*, 133 F.3d 758, 762 (10th Cir. 1998).

Petitioner fails to meet this standard. The record shows only minor discrepancies and variances in phrasing that naturally occur in the absence of perjury. The state court reasonably found that Petitioner failed to show that the discrepancies were material to his case. Further, the jury was made well aware of the variances in the testimony so was in a good position to make informed credibility determinations regarding the testimony. Petitioner has not shown any prosecutorial misconduct, let alone misconduct sufficient to violate his due process rights.

### 2. Closing Argument

During closing arguments the prosecutor asked the jury how they would react if they were in the same situation as the witnesses. (R. XXI, 189-90.) This was in response to defense counsel's closing argument which questioned the actions and credibility of the witnesses. Petitioner argues that the prosecutor made an improper "golden rule" argument by asking the members of the jury to put themselves in the shoes of the victim. *See Blevins v. Cessna Aircraft Co.,* 728 F.2d 1576, 1580 (10th Cir. 1984). The Court instructed the jury that statements of counsel are not evidence. (R IV, p. 119.)

## a. State Court Holding

The state court questioned whether the "golden rule" applied here, since none of the witnesses, to whom the argument was directed, was in the position of a party, a victim, or the victim's family members. No. 06-CV-208, Vol. I, p. 92. It found that even if the "golden rule" applied, the Prosecutor did not violate it, stating:

> The clear purpose of [the prosecutor's] remarks was to urge the jury to consider why the horrendous events surrounding the killing of Michael Smith were not reported posthaste to law enforcement after [Petitioner] and Brian Smith had left the mobile home. His comments in asking the jury to consider the fear in the minds of the Evelands and Striplin were not designed to win sympathy for them.

(R. Case No. 06-CV-208, I, 92.).

On appellate review, the KCOA concluded "the district court's findings of fact are supported by substantial competent evidence and are sufficient to support the district court's conclusions of law. We further conclude that the district court's memorandum decision adequately explained the basis of its decision." *Engelhardt*, 2011 WL 445953.

## b. Habeas Review

As noted above, on habeas review, the relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. "[A] Golden Rule appeal "is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and

bias rather than on the evidence." *Blevins v. Cessna Aircraft Co.*, 728 F.2d 1576, 1580 (10th Cir. 1984).

Petitioner has not shown that the prosecutor made a prohibited golden rule argument. See *United States v. Kirvan*, 997 F.2d 963, 964 (1st Cir. 1993) (emphasis in original) (finding "golden rule" cases "do not apply where, as here, the jury is asked to put itself in the place of an eyewitness.") The prosecutor's invitation was not an improper appeal to the jury to base its decision on sympathy for the victim but was rather a means of asking the jury to reconstruct the situation in order to decide whether a witness's testimony was plausible. And the state court's decision that the prosecutor had not engaged in misconduct is reasonable and is neither contrary to, nor involves an unreasonable application of Supreme Court precedent.

Petitioner additionally alleges that the prosecutor used false evidence in his closing argument, but this is a variation on the theme addressed above – that the prosecutor elicited perjured testimony. It fails for the same reason, as Petitioner has not shown that the prosecutor knowingly referred to any perjured or false testimony in his closing.

### K. Ineffective Trial Counsel

Petitioner argues that his trial counsel was ineffective for (1) failing to seek admission of letters written by Brian Smith, and (2) failing to request a limiting instruction to caution the jury about the admission of those letters.

### a. State Court Holding

Petitioner claimed that his trial counsel was ineffective for failing to seek the admission of two letters written by Brian Smith that tended to minimize Petitioner's involvement in the murder and undermine Smith's credibility. In reviewing this claim in Petitioner's collateral appeal, the state district court ruled that trial counsel's representation did in fact fall below an objective standard of reasonableness because he should have introduced these letters at trial. The district court applied the familiar test of *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). (R. Case No. 06-CV-208, I, 94.).

However, the court also found that Petitioner was ultimately not prejudiced by his counsel's error because there was so much other compelling evidence against petitioner.  Case No. 06-CV- 208, I, 95-96. As the district court noted, "multiple witnesses offered testimony implicating [petitioner] in the murder." (R. Case No. 06-CV-208, I, 96.) (quoting *Englehardt*, 280 Kan. at 142.) The court found that Smith's testimony was not critical to the prosecution's case, as he was not called as a witness in the State's case-in-chief. Moreover, Smith had been subjected to rigorous cross-examination concerning his constant shifting version of events. So the jury was well aware of Smith's conflicting statements and questionable credibility. Petitioner believes that by making these judgment and credibility

calls, the judge invaded the province of the jury who alone should decide his guilt.

Petitioner also alleged that his trial counsel was ineffective for failing to request a limiting instruction to caution the jury about Smith's testimony. Apparently, no instruction was proffered, and none is specified. The state courts believed that Petitioner wanted an instruction about Smith's testimony that came in indirectly as admissible hearsay presented through other witnesses called by the State. The state district court rejected this claim, finding that the trial court had handled the hearsay issues properly, that no law required the giving of any jury instruction in the stated circumstances, that the defense had every opportunity to test Smith's comments, that defense counsel had put Smith on the stand and subjected him to examination by defense counsel on all aspects of his testimony, and that Smith's credibility was vigorously attacked by the defense. It ultimately held that Petitioner failed to show ineffective assistance of trial counsel which resulted in prejudice. (R. Case No. 06-CV-208, I, 97). The KCOA summarily affirmed, as noted above. *See Engelhardt,* 2011 WL 445953 at *1.

But in his habeas petition, Petitioner alleges that the state court judge missed the mark. Petitioner states that the evidence in question was *not* Smith's testimony related by other witness, but the two letters which were in Smith's own handwriting, which Petitioner views as clear proof, an admission

against interest that Smith had double-crossed the Petitioner. DK. 1, p. 51. Accordingly, the Court addresses this as one issue.

### b. Habeas Review

To prevail on a claim for ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland,* 466 U.S. at 700.

In reviewing for deficient performance, a trial court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland,* at 689. A petitioner demonstrates deficient performance by showing counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. Petitioner must show that counsels' decision was "completely unreasonable, not merely wrong." *Boyd v. Ward,* 179 F.3d 904, 914 (10th Cir. 1999). But [w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter,* –– __ U.S. __, 131 S.Ct. 770, 788 (2011).

To demonstrate prejudice, a habeas petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Strickland*, at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The Court has carefully reviewed Smith's letters which should have been but were not offered at trial. The contents of the first letter most favorable to the defendant say Smith is "going to have to take this to jury trial to clear you in a court"; "I told them I tried to pull you off"; "I said there was a cut, but I didn't see you do anything"; "Gonna do what I can. I already told them I did everything"; "Now trying to convince these fags you DIDN'T do shit." The second letter includes Smith's statements: "I'm sorry I lied"; "I keep changing stories just because I'll probably do it again."; "It's kin[d]a a game now."; "I ain't never got away with shit in life[.] I'd like to this (sic)."

Petitioner interprets these letters to mean that Smith lied about Petitioner's involvement in the crime and that Smith admitted that he alone committed the crime. But one could just as easily interpret the letters to mean that Smith's lie was in taking the blame for everything initially, and in saying that Petitioner didn't do anything. Testimony by witnesses who were present in the trailer during the murder established that soon after the crime, Petitioner told Smith to take all the blame, Smith agreed to do so, and Petitioner told witnesses who were in the bedroom to blame Smith for everything. Smith's initially taking the blame himself, then telling the truth is

consistent with that scenario. And Smith's varying version of events was made known to the jury through other testimony.

More importantly, testimony about petitioner's involvement establishes that he aided and abetted first degree murder, if not by stabbing the victim repeatedly or slicing the victim's throat himself, then by taking intentional acts taken to further Smith's doing so, including the following: standing over the victim who was sleeping on the couch, yelling at him loudly, accusing him of being a nark; slapping the victim; making the witnesses go to and remain in the bedroom during the stabbing; demanding that the witnesses unplug the phones before the stabbing started; staying in the living room with Smith for 10–30 minutes while the victim, who was repeatedly screaming "No" was stabbed approximately 55 times until dead; holding the knife in his hands during the attack; returning to the bedroom after the murder "covered in blood from head to toe," with blood on his hands and clothes; demanding that the witnesses in the bedroom assist him in various ways to hide the crime (cleaning up the blood from the ceiling, the floor, the couch, and the walls) (tearing down and burning the couch, getting rid of the wallpaper, painting the walls, tearing up the carpet); and instructing the witnesses what to say if the police came.

Testimony also established that immediately after the murder, Petitioner told the witnesses he had just killed someone, and described in

gory detail how the blood had looked as it spurted out of the victim when he stabbed him, and the hissing sound that it had made.

Thus even if Petitioner never stabbed the victim, the evidence was overwhelming that he intentionally aided Smith in murdering the victim, with the intent to assist in its commission. Further, the evidence established that petitioner planned beforehand to kill the victim, as is shown by his requiring the witnesses to unplug the phone, his sequestering the witnesses in the bedroom, the lack of provocation for the killing, petitioner's conduct before and after the killing, petitioner's threats before and during the occurrence, and the dealing of lethal blows after the victim was rendered helpless. In light of the consistency and weight of the testimony against the Petitioner, Petitioner has not shown a reasonable probability that if Smith's letters had been admitted at trial, he would not have been found guilty of first-degree murder. The state court relied on *Strickland* in reaching its conclusions, and its resolution of Petitioner's claim was a reasonable application of *Strickland*. No basis for habeas relief has been shown.

### L. Appellate Counsel

Petitioner contends that his appellate counsel was ineffective in not raising the following issues on direct appeal: judicial bias; prosecutorial misconduct; and ineffective assistance of trial counsel.

### 1. State Court Holding

The state district court summarily rejected Petitioner's claim, stating:

> This issue deserves little discussion. Since this Court has found that the issues raised by [Petitioner] in this 60-1507 motion lack merit, it follows that his appellate counsel would not have been likely to succeed with them on appeal. By definition, therefore, he could not possibly have been ineffective for failure to raise these points.

(R. Case No. 06-CV-208, I, 97.) The KCOA affirmed this determination. *Engelhardt v. State*, 2011 WL 445953 at *1.

## 2. Habeas Review

The standard for assessing appellate counsel's performance is the same as that applied to trial counsel. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). Petitioner must show that his appellate counsel's performance was objectively unreasonable, and demonstrate a reasonable probability that but for his counsel's alleged errors, he would have prevailed on appeal. *Id.* Moreover, a criminal defendant does not have a constitutional right to compel counsel to raise claims on appeal, even nonfriviolous ones, if counsel, "as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Indeed, "winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues," is one of the hallmarks of effective appellate advocacy. *Id* at 751-752. And, appellate counsel is not ineffective for failing to raise a meritless claim. *Martin v. Kaiser*, 907 F.2d 931, 936 (10th Cir. 1990).

The three issues stated by Petitioner and omitted by appellate counsel have been addressed above and have no merit. Accordingly, no basis for habeas relief has been shown.

**M. Cumulative Error**

The Kansas Supreme Court found the existence of harmless trial errors, but ruled that because the evidence of Petitioner's guilt was so overwhelming, the cumulative effect of any harmless errors remained harmless and did not warrant reversal. *Engelhardt,* 280 Kan. at 140.

In the federal habeas context, a cumulative-error analysis aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless. *Lott v. Trammell,* 705 F.3d 1167, 1223 (10th Cir. 2013) (internal quotation marks and citation omitted), *petition for cert. filed,* (Jun. 12, 2013). This analysis is triggered "only if there are at least two errors." *Id.* "The cumulative effect of the errors will be deemed harmful if they so infected the trial with unfairness as to make the resulting conviction a denial of due process, or rendered the sentencing fundamentally unfair ..." *Lockett v. Trammel,* 711 F.3d 1218, 1245 (10th Cir. 2013) (internal quotation marks and citation omitted). This standard has not been met so Petitioner is not entitled to relief on this claim.

### III. Evidentiary Hearing

The court finds no need for an evidentiary hearing. ("[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record.)" *Anderson v. Attorney Gen. of Kansas,* 425 F.3d 853, 859 (10th Cir. 2005) *Schriro*, 550 U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

### IV. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has not met this standard as to any issue presented, so no certificate of appealability shall be granted.

IT IS THEREFORE ORDERED that the petition for habeas corpus relief under 28 U.S.C. § 2254 (Dk.1) is denied.

Dated this 31st  day of January, 2014, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge